## Benninger *versus* Hankee and Brown.

1. Benninger assigned the lease of a quarry to Hankee, who at the same time gave his note to pay " one year after date" to Benninger $500, on condition that the " quarry for the lease whereof this is part payment should be or become" worth $10,000. *Held*, that the sum was payable only if the quarry became worth $10,000 within the year.

2. The promise was not to be performed at an indefinite time on the happening of a contingency, but at a definite time if the contingency had then occurred.

3. Time was of the essence of this contract.

4. When there is a promise to pay at a specified time if a particular event should happen, the time for performance and payment is definite, and no liability arises unless the event happens within the time for performance.

5. When the promise is to pay on the happening of an event, the time for performance and payment is indefinite; and the obligation to perform is on the happening of the contingency, whenever that may be.

March 15th 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Lehigh county*: No. 263, to January Term 1869.

This was an action of assumpsit brought December 15th 1866, by Thomas Benninger against Hiram J. Hankee and James Brown.

It appeared by the evidence that on the 9th of February 1865, John Kern leased to George Newhard and Thomas Benninger for twelve years, a piece of land for the purpose of opening a slate quarry, for a certain rent per square foot of slate taken out. On the 17th of November in the same year, Benninger, " in consideration of $500 to (him) in hand paid," assigned to the defendants " the one-half right of indenture of lease * * for the residue of the term." At the same time the defendants executed and delivered to the plaintiff the following instrument:—

" 500 $\frac{00}{100}$ One year after date we promise to pay to Thomas Benninger, his heirs or assigns, the sum of Five Hundred dollars without interest for value received, subject to the following condition, viz.: That should the slate quarry property for the lease whereof this is part payment be or become a very valuable property then this note to be of full effect; if the said quarry pro-

[Benninger *v.* Hankee.]

perty however should not become to undersigned of great value then the above note to be null and void.    Ten thousand dollars for the whole quarry being considered very valuable.

HIRAM J. HANKEE,<br>JAMES BROWN.

November 17th 1865."

It was on this instrument that the suit was founded, the plaintiff claiming to recover the $500, on the ground that the whole quarry was worth $10,000.

On the trial before Longaker, P. J., the plaintiff offered to show by several witnesses the value of the quarry at times named posterior to the 17th of November 1866, the date when the $500 mentioned in the note would have been payable.    On the objection of the defendants the court refused the offer and sealed bills of exception.    There was conflicting evidence as to the value of the quarry.    The court, amongst other things, charged:—

"The court therefore say to you that the agreement between the parties is that Messrs. Hankee & Brown, the defendants, were obliged to pay to Thomas Benninger, the plaintiff, the $500, the amount mentioned in the paper, if the entire leasehold, not the one-half, but the whole of it, was worth at any time from the 17th day of November 1865 to the 17th day of November 1866, the sum of *ten thousand dollars.*" * * *

"The real question for your consideration and finding is ; was the leasehold at any time in that year worth to the defendants the said sum of $10,000, or could they have sold it for that amount, in such a way as I have already indicated, then the plaintiff is entitled to recover the $500 with interest from the 17th day of November 1866, up to this date. * * *

"I may here say to you that it devolves upon the plaintiff to show affirmatively that the whole lease was worth at least the $10,000, at some time during the year; that his testimony must be stronger than that of the defendant, so as to outweigh it; because if there should be an equipoise (neither stronger than the other), there can be no recovery. * * *

"The plaintiff in proving value must overcome the inference, which may be justly gathered from the transaction itself, that at the time of the execution of the agreement of sale and purchase and at the giving of the conditional note—the parties themselves did not consider the lease worth $10,000; but that they supposed its future value might be or would become $10,000 or more. Upon the happening of that event, the $500 would become due and payable at the maturity of the *note.*    It is therefore a condition precedent as to the value of the lease, and the contingency must have happened before the plaintiff can recover.    Did it then

[Benninger v. Hankee.]

happen? The plaintiff says it did, and that the fact of value is shown not only by his own witnesses, but by the cross-examination of defendant's witnesses also." * *

After referring to the evidence the court proceeded: "You will therefore review all the evidence of the plaintiff and pass upon it as a whole; taking into consideration the relative value of this lease, as compared with the prices for which other land sold in that locality, and ask yourselves whether the plaintiff's testimony presents such a state of facts as will entitle him to recover. If it does not then there will be an end to his case. If however it does, then you will proceed to examine the testimony of the defendant, and find whether his proof will prevent a recovery, when weighed against and compared with the evidence of the plaintiff. * *

" It is however for you to marshal all the testimony, and ascertain whether the lease was worth at any time from November 17th 1865 to November 17th 1866 the sum of $10,000; if it was then the plaintiff is entitled to recover, if it was not the verdict must be for the defendant. If you find for the plaintiff he will be entitled to interest on the $500 from November 17th 1866 to this date."

The verdict was for the defendants, the plaintiff removed the case to the Supreme Court, and assigned for error the rejection of his offers of evidence and the charge of the court.

*J. D. Stiles*, for plaintiff in error.

*C. M. Runk* and *S. A. Bridges*, for defendants in error.

The opinion of the court was delivered, May 11th 1869, by

WILLIAMS, J.—All the assignments of error in this case raise but one question, and that is, What is the proper construction of the note or instrument upon which this suit was brought? The defendants promised, in substance, to pay the plaintiff one year after date the sum of $500, if the quarry property mentioned in the note should be, or become of the value of $10,000. The promise was not absolute, but conditional. It was not to be performed at an indefinite time, upon the happening of the contingency, but at a definite or specified time, if the contingency had then occurred. Time was an essential element of the contract, not only as it respects the promise, but as it respects the happening of the contingency upon which it was to be performed. A promise to pay at a specified time, if a particular event should happen, is essentially different from a promise to pay upon the happening of the event, or whenever it should occur. In the former case the time for the performance of the promise and the

[Benninger *v.* Hankee.]

happening of the event is definite, and no liability arises on the promise unless the event happens within the time limited for its performance; in the latter, the time for the performance of the promise and the happening of the event is indefinite, and the obligation to perform arises upon the happening of the contingency whenever that may be. In this case the defendants, as we have seen, promised to pay the note in one year after date if the quarry property should become of the value of $10,000. There is no room for doubt as to the meaning of the contract. The defendants were bound to pay the note at maturity if the contingency had then occurred, for this was their promise: but if the contingency had not occurred, they were under no obligation to pay it, for by the very terms of the contract the happening of the contingency was an essential condition upon which their liability was to arise. And it is equally clear that the defendants were under no obligation to pay the note if the contingency occurred after its maturity, for they did not promise to pay it in that event. They only promised to pay it if the contingency should happen at or within the time fixed for its payment. If it did, then, as expressly stipulated, the note was "to be of full effect," otherwise it was "to be null and void." This was their whole promise—"it hath this extent, no more."

It follows that the court was right in rejecting the evidence offered by the plaintiffs for the purpose of showing the value of the quarry property after the maturity of the note, and before the bringing of the action; and in the construction given to the note in the charge. Nor has the plaintiff any reason to complain of the manner in which the case was submitted to the jury. It was tried with great fairness and impartiality, and the learned judge was clearly right in instructing the jury that it was for them to marshal all the testimony and ascertain whether the lease was worth at any time between the date of the note and its maturity, the sum of $10,000; and, if it was, that then the plaintiff was entitled to recover: if it was not, that their verdict must be for the defendants.

Judgment affirmed.